UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| REGINALD BOONE, | ) |
| Petitioner, | ) Civil Action No. 5: 14-84-DCR |
| v. | ) |
| FRANCISCO QUINTANA, Warden, | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Respondent. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Response filed by Warden Quintana to the Court's March 21, 2016, Memorandum Opinion and Order. [Record Nos. 27, 29] Petitioner Reginald Boone has not filed any reply in further support of his petition, and this matter is therefore ripe for decision.

**I**

The Court summarized the factual and legal background relevant to Boone's claims in its prior opinion [Record No. 23], and will not repeat them in detail here. In summary, Boone was convicted in 1993 of "using" a firearm during the commission of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1)(A), because he had an acquaintance purchase a shotgun on his behalf for $150 cash and tipped his buyer with $30 worth of crack cocaine. The trial court imposed a sixty-month sentence for this offense, set forth in Count 27 of the indictment, to run consecutively to the other sentences imposed. *United States v. Boone*, No. 2: 92-CR-113-2 (E.D. Va. 1992); Brief for Appellant, *United States*

-1-

*v. Boone*, No. 96-4971 (4th Cir. 1997), 1997 WL 33544158, at *1-2. On direct appeal, the Fourth Circuit rejected Boone's claim that merely buying a shotgun could not constitute the "use" of it within the meaning of § 924(c), concluding that this argument was foreclosed by *Smith v. United States*, 508 U.S. 223 (1993) (holding that sale of gun to purchase drugs could constitute "use" under § 924(c)). *United States v. Harris*, 39 F. 3d 1262, 1269 (4th Cir. 1994).

However, a decade after Boone's conviction became final, the Supreme Court held that "a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs." *Watson v. United States*, 552 U.S. 74, 83 (2007). In his § 2241 petition, Boone contends that *Watson* invalidates his § 924(c) conviction in Count 27 and that his claim is one of "actual innocence" cognizable under § 2241. [Record No. 1 at pp. 8-9 (citing *United States v. Thomas*, 627 F. 3d 534, 535-36 (4th Cir. 2010))] In its prior opinion, the Court concluded that Boone appeared to be entitled to relief, determining that his *Watson* claim is cognizable in a § 2241 petition because a motion under 28 U.S.C. § 2255 was structurally inadequate to raise it, and because *Watson* is retroactively applicable to cases on collateral review. To conclusively determine the final issue under *Wooten v. Cauley*, 677 F.3d 303, 307-08 (6th Cir. 2012) - whether *Watson* rendered Boone's conduct non-criminal - the Court solicited a response from the warden to clarify whether Boone was convicted solely of "using" a firearm under § 924(c)(1)(A). [Record No. 23 at pp. 8-9]

The warden's Response provides substantial background materials from the underlying criminal proceedings which are largely, although not entirely, consistent in

indicating that Boone was charged and convicted only of "using" a firearm under § 924(c)(1)(A). [Record No. 27] The indictment charged Boone only with using the shotgun.

> On or about November 13, 1991, at Norfolk, Virginia, in the Eastern District of Virginia, REGINALD BOONE, a/k/a "Reggie", defendant herein, during and in relation to a drug trafficking crime for which he can be prosecuted in a court of the United States, **used** a firearm, to wit: a Maverick twelve gauge pump shotgun, Serial Number MV76721A. (In violation of Title 18, United States Code, Section 924(c)(1)).

[Record No. 27 at p. 2 (emphasis added); see also Record Nos. 27-10 at p. 2; 27-11 at p. 4]

At trial, Napolean Yarn testified that Boone had given him $150 to purchase a shotgun for him; that he had purchased the weapon; and that Boone had given him $30 worth of crack cocaine for his trouble. However, Yarn did not offer any further testimony about Boone or the shotgun after the transaction was completed. [Record No. 27-2 at pp. 6-11] The jury found Boone guilty of Count 27 on the indictment, and the verdict form neither provided room for clarification nor required further elaboration. [Record No. 27-4 at p. 2] The presentence report described Boone's conviction as one only for the use of a firearm. [Record No. 29 at pp. 3, 5]

Similarly, at the initial sentencing and subsequent resentencing hearings both counsel and the trial court treated his conviction as one for use of the firearm, and such was embodied in the judgment entered in the case. [Record Nos. 27-12 at pp. 18-20; 27-13 at p. 19; 27-8 at 17-18] The only variation from this otherwise consistent narrative is found in the instructions to the jury, which advised - incorrectly - that Count 27 alleged that Boone

had "used **or carried** a firearm during and in relation to the commission of a drug trafficking crime." [Record No. 27-3 at p. 3 (emphasis added)]

The warden concedes that Boone is entitled to relief if the charge in the indictment controls.

> If the language of the indictment is determinative, then it appears that Boone was convicted solely under § 924(c)'s "use" prong, as that document charges him only with having "used a firearm," not with carrying or possessing it. Thus, Boone's situation is distinguishable from cases in which the § 924(c) conviction was affirmed because the defendant had also been charged with "carrying" or "possessing" a firearm, and the evidence was sufficient to support the conviction under those other prongs of the statute. In the present case, **the government previously relied only on the barter aspect of the transaction, rather than asserting that Boone actively carried or employed the weapon at issue** in Count 27, in arguing for the affirmance of his conviction. Boone's case, therefore, would seem to be indistinguishable from *Watson*, which rejected the government's argument that "use" could mean "receipt in barter."

[Record No. 27 at pp. 7-8 (citations omitted; emphasis added)][1]

With respect to the jury instructions, the warden notes that the difference between the narrow charge in the indictment and the broader language in the jury instruction would likely not be enough to constitute a constructive amendment of the indictment under *United States v. Kuehne*, 547 F.3d 667, 684 (6th Cir. 2008), but candidly acknowledges that

---

[1] The warden separately notes that the "possession" prong in 18 U.S.C. § 924(c) did not exist until Congress amended the statute in response to *Bailey* in 1998, seven years after Boone committed the conduct which formed the basis for the charge in Count 27, and thus could not have been a basis for his conviction. *Id*. at p. 8 n.3 (citing *United States v. Combs*, 369 F.3d 925, 931 (6th Cir. 2004)).

*Kuehne* addresses a distinct legal issue and arose in a different context, significantly limiting its utility here. [Record No. 27 at pp. 9-11]

As the Court noted in its prior opinion, some courts have concluded that *Watson* does not mandate habeas relief in every case where a defendant was convicted under § 924(c) for buying a gun with drugs. [Record No. 23 at pp. 8-9] But in each of those cases the court held that the § 924(c) conviction could stand only because the defendant had been indicted and convicted not only of "using" the firearm, but also of either "carrying" it or "possessing" it in furtherance of a drug trafficking crime. *Zuniga-Hernandez v. Childress*, 548 F. App'x 147, 150-51 (5th Cir. 2013) (affirming denial of § 2241 petition seeking relief under *Watson* where the defendant was indicted and convicted under § 924(c) for both using and carrying a firearm); *Winkelman v. Longley*, No. 11-159E, 2011 WL 7025927, at *6-8 (W.D. Penn. Nov. 9, 2011) (denying *Watson* claim where defendant was charged with using, carrying, and possessing firearms in furtherance of a drug trafficking crime) (citing *United States v. Gardner*, 602 F.3d 97, 101-02 (2d Cir. 2010) (trading drugs in order to obtain guns violates the "possession" prong of 924(c) even after *Watson*)); see also *Morsley v. Holt*, No. 1: CV-11-1246, 2014 WL 2941221, at *5 (M.D. Penn. June 30, 2014) (denying § 2241 petition predicated upon *Watson* where defendant was convicted under count charging him with both use of a firearm under § 924(c) and aiding and abetting a § 924(c) violation under 18 U.S.C. § 2).

Here, while the jury instructions were broad enough to cover either use or carrying, the warden concedes that the indictment charged Boone only with using the firearm, and

no evidence was offered at trial to support the notion that Boone carried the firearm on the date specified in the indictment in furtherance of a drug trafficking crime apart from the barter transaction invalidated by *Watson*. [Record No. 27-2 at pp. 6-1; 27-10 at p. 2; 27-11 at p. 4] The Supreme Court in *Smith* noted that what matters is the crime for which the defendant was actually indicted and convicted, not what other charges might have been supported by the evidence. *Smith v. United States*, 508 U.S. 223, 228 (1993) ("Of course, § 924(c)(1) is not limited to those cases in which a gun is used; it applies with equal force whenever a gun is 'carrie[d].' In this case, however, the indictment alleged only that petitioner 'use[d]' the MAC-10. App. 4. Accordingly, we do not consider whether the evidence might support the conclusion that petitioner carried the MAC-10 within the meaning of § 924(c)(1).")

Cases like *Zuniga-Hernandez* are therefore distinguishable where, as here, the government relied exclusively on the barter aspect of the transaction to support the § 924(c) conviction for "using" a firearm. Cf. *Short v. Schultz*, No. 7: 08CV00057, 2008 WL 1984262, at *5 n.3 (W.D. Va. May 6, 2008) ("The words 'use' and 'carry' denote different conduct … but particularly after *Watson*, it cannot be argued that Short's receipt of the firearms was included within the statutory meaning of 'carry' since Short did not carry the firearms, if at all, until after the drug transactions were completed and not in the course of them."); see also *Wright v. United States*, No. 5: 03-CR-39, 2011 WL 3468417, at *2 (E.D.N.C. Aug. 8, 2011) (concluding that *Watson* invalidates a § 924(c) conviction even when the indictment charged the defendant with using *and* carrying firearms, where the

evidence at trial indicated only that the defendant had traded marijuana to purchase firearms).

The Court, therefore, concludes that Boone was convicted only of "using" a firearm in furtherance of a drug trafficking crime based upon conduct that *Watson* makes clear is not criminal. *Pickett v. Carvajal*, No. 5: 11-CV-17, 2011 WL 4592380, at *2 (E.D. Tex. Sept. 2, 2011) (granting § 2241 petition under *Watson* where defendant's § 924(c) conviction for "using" a firearm was based solely upon purchase of gun in exchange for drugs). Thus, Boone's § 924(c) conviction under Count 27 is invalid. *Wooten*, 677 F.3d at 306-08.

**II**

Having concluded that Boone is entitled to relief, the final issue is the proper procedure to effectuate that determination. Because relief from a federal conviction is obtained pursuant to § 2241 only under extraordinarily rare circumstances, guidance on implementing a remedy is rather scarce and, regrettably, contradictory. *United States v. Brye*, 935 F. Supp. 2d 1319, 1320-21 (M.D. Fla. 2013) ("The issue of how a federal district court of incarceration deals procedurally and substantively with a § 2241 petition challenging a judgment of conviction and sentence suffered in another federal district court has, as will be explained later, bedeviled and vexed district courts throughout the country over the past several years under similar circumstances presented by this case.").

A number of district courts, having concluded that a federal conviction is invalid in a § 2241 proceeding, have vacated the conviction and transferred the petition to the

sentencing court for resentencing. For instance, a federal court in Texas granted relief under *Watson*, vacated the conviction, and transferred the case to the sentencing court for resentencing. *Pickett*, 2011 WL 4592380, at *2. Following transfer, the sentencing court expressed concern regarding the propriety of the transfer, but entered a revised judgment without the § 924(c) conviction, a result affirmed by the Fourth Circuit. *United States v. Pickett*, No. 7:04-CR-47-F-1 (E.D.N.C. 2004) (Record Nos. 174, 179, 188 therein at p. 4), *aff'd*, No. 12-4278 (4th Cir. March 5, 2013) (implying that entry of a new, revised judgment was proper "because the order entered by the district court was for the purpose of correcting the judgment, rather than imposing a new sentence …").

In another case, a habeas court concluded that the petitioner was entitled to habeas relief, noted that under the Fifth Circuit's "aggregate package" approach to sentencing a "sentencing enhancement applied exclusively to the vacated counts could be re-applied to the remaining counts," vacated the invalidated conviction, and transferred the case to the sentencing court for resentencing. *Rudisill v. Martin*, No. 3: 13-CV-834(DCB)(MTP) (S.D. Miss. March 31, 2015). Following transfer, the sentencing court resentenced the defendant in accord with the grant of § 2241 habeas relief. *United States v. Rudisill*, No. 2: 97-CR-237-ROS-6 (D. Ariz. 1997) (Record No. 1608, 1610 therein).

However, one court has held that a habeas court has no authority to order a sister court to resentence a defendant. *Brye*, 935 F. Supp. 2d at 1321 (citing *Marshall v. Yost*, No. 09-62J, 2010 WL 5053920, at *9 (W.D. Pa. Dec. 3, 2010)). Transferring this case to another federal court to effectuate this Court's judgment also runs the significant risk that

-8-

the transferee court may be compelled to deny relief based upon the controlling law of its circuit. For instance, in *McClain v. Owens*, No. 8: 09-3285-PMD-BHH, 2010 WL 1418266 (D.S.C. 2010), the habeas court chose to construe the defendant's § 2241 petition as a writ of error *coram nobis* and transferred it to the district of sentencing pursuant to the Third Circuit's decision in *In re: Nwanze*, 242 F. 3d 521, 525-27 (3d Cir. 2001) (suggesting that transferring a § 2241 petition to the district of sentencing would be improper, but that there is a "plausible argument" that the sentencing court could effectuate the habeas court's judgment following transfer by invoking its authority to issue a writ of error *coram nobis* pursuant to the All Writs Act, 28 U.S.C. § 1651). But following transfer, the sentencing court in Florida dismissed the petition because the law of the Eleventh Circuit is, like that of most circuits, clear that a federal prisoner still in custody may not challenge his federal conviction by writ of error *coram nobis*. *McClain v. Owens*, No. 3:10-CV-291-HWM-MCR (M.D. Fla. 2010). The law of the Fourth Circuit, which encompasses the district of Boone's conviction, is to like effect. *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012); *United States v. Toolasprashad*, 474 F. App'x 408 (4th Cir. 2012); see also *Puzey v. Warden FCC Allenwood*, No. 3: 15-CV-57, 2015 WL 7300549, at *3-4 (N.D. W.Va. Nov. 18, 2015) (following transfer of § 2241 petition asserting *Watson* claim from district of confinement, sentencing court denied petition and denied request to construe petition as writ of error *coram nobis* because petitioner was still in custody), *appeal pending*, No. 16-6078 (4th Cir. 2016). See also *Matus-Leva v. United States*, 287 F.3d 758,

760-61 (9th Cir. 2002) (federal prisoner cannot challenge conviction via writ of *coram nobis* if claims could be raised in federal habeas petition).

In *Rumsfeld v. Padilla*, 542 U.S. 426, 451 (2004), Justices Kennedy and O'Connor joined in a concurring opinion which indicated that "the proper location of a habeas petition is best understood as a question of personal jurisdiction or venue."[2]  In light of the concurring opinion, some courts have concluded that the government may waive any objection to personal jurisdiction or venue, permitting the habeas petition to be transferred to the sentencing court for resolution. *Rudisill v. Martin*, No. 5: 08-CV-272(DCB)(MTP), 2013 WL 1871701, at *4-5, 14 (S.D. Miss. May 3, 2013) (before reaching the merits of the petition, concluding that neither the All Writs Act, 28 U.S.C. § 1651, nor the forum *non conveniens* statute, 28 U.S.C. § 1404(a), permitted the transfer of a § 2241 petition outside the district of confinement, but the government may choose to waive its objections to personal jurisdiction or venue in the district of the sentencing court).  See also *Blackstock v. Hufford*, No. 4: CV-11-791, 2011 WL 2470415, at *2-3 (M.D. Penn. June 20, 2011) (§ 2241 petition may be transferred to district court that imposed sentence if government waives objections to personal jurisdiction or venue); *Cox v. Holt*, No. 1:08-CV-2268 (M.D. Penn. 2009) (transferring a *Watson* claim to the sentencing court, without prejudice to the

---

[2]  Justice Rehnquist, writing for the majority and joined by Justices Scalia and Thomas, did not endorse or comment upon this view, but did note that it was only when the petitioner's "nominal custodian" was located outside the district "did we invoke concepts of personal jurisdiction to hold that the custodian was 'present' in California through the actions of his agents." *Rumsfeld*, 542 U.S. at 446.

petitioner's right to reinstate the habeas action in the present district or file a new petition in any district of confinement if the sentencing court is unable or unwilling to grant relief); *Lilly v. Rios*, No. 1: 10-CV-1666-LJO-MJS-HC (E.D. Cal. June 14, 2011) (same).

The Seventh Circuit sitting *en banc* recently suggested that a similar approach might be viable. *Webster v. Daniels*, 784 F. 3d 1123, 1145 (7th Cir. 2015) (*en banc*) ("The district court thus has no power under [§1404(a)] to transfer the case either on its own initiative or upon the motion of either party. (Section 1406(a) is also inapplicable, because there is nothing wrong with the district in which Webster is proceeding.) If both Webster and Warden Daniels were to consent to a transfer to another district, they might have an enforceable agreement that the court could implement, by analogy to choice-of-forum agreements. See *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, __ U.S. __, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013). The only thing that seems clear is that in the absence of any such consent, the case must stay in Indiana.").

But faced with such disparate and irreconcilable outcomes, a return to first principles is instructive. In *Rumsfeld*, the Supreme Court re-affirmed the longstanding principle that the proper respondent to a habeas corpus petition challenging present confinement is the prisoner's immediate custodian. This conclusion was based in substantial part upon its centuries-old understanding that habeas "contemplate[s] a proceeding against some person who has the *immediate* custody of the party detained, with the power to produce the body of such party before the court or judge, *that he may be liberated if no sufficient reason is shown to the contrary.*" *Rumsfeld*, 542 U.S. at 435 (latter

-11-

emphasis added) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). As the Supreme Court stated in *Wales*, the writ of habeas corpus is designed:

> to enable the court to inquire, first, if the petitioner is restrained of his liberty. If he is not, the court can do nothing but discharge the writ. If there is such restraint, the court can then inquire into the cause of it, *and if the alleged cause be unlawful, it must then discharge the prisoner.*

*Wales*, 114 U.S. at 571 (emphasis added). These cases indicate that the involvement of a remote sentencing court is simply not necessary to effect to habeas court's decree. The court in the district of confinement is fully authorized by the habeas statutes to determine the validity of the petitioner's confinement and, if appropriate, to grant relief necessary to effectuate that determination by order directed to the custodial officer located within the district.

This view is supported by the Supreme Court's harmonization of its holding in *Rumsfeld* with its prior decision in *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973). As the Court explained in *Rumsfeld*:

> In *Braden*, for example, an Alabama prisoner filed a habeas petition in the Western District of Kentucky. He did not contest the validity of the Alabama conviction for which he was confined, but instead challenged a detainer lodged against him in Kentucky state court. Noting that petitioner sought to challenge a "confinement that would be imposed in the future," we held that petitioner was "in custody" in Kentucky by virtue of the detainer. 410 U.S., at 488-489, 93 S.Ct. 1123. In these circumstances, the Court held that the proper respondent was not the prisoner's immediate physical custodian (the Alabama warden), but was instead the Kentucky court in which the detainer was lodged. This made sense because the Alabama warden was not "the person who [held] him in what [was] alleged to be unlawful custody." *Id.*, at 494-495, 93 S.Ct. 1123 (citing *Wales*, 114 U.S., at 574); *Hensley* [*v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara Cty.*, 411 U.S. 345, 350, n. 8 (1973)], *supra*, at 351, n. 9, 93 S.Ct. 1571 (observing that the petitioner in *Braden* "was in the custody of Kentucky officials for

> purposes of his habeas corpus action"). Under *Braden*, then, a habeas petitioner who challenges a form of "custody" other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged "custody." But nothing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement. See *Al-Marri*, supra, at 711-712; *Monk*, supra, at 369. To the contrary, *Braden* cited *Wales* favorably and reiterated the traditional rule that a prisoner seeking release from confinement must sue his "jailer." 410 U.S., at 495, 93 S. Ct. 1123 (internal quotation marks omitted).

*Rumsfeld*, 542 U.S. at 438. *Braden* and *Rumsfeld* teach that a habeas petition is necessarily directed towards a particular respondent precisely because that is the individual or entity that has the legal authority to effectuate relief should the habeas court find it warranted: the immediate custodian in cases challenging present confinement and the issuing court in cases challenging a detainer in anticipation of future prosecution. *Braden*, 410 U.S. at 494-95 ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.").

In reaching its conclusion, the *Braden* Court quoted with approval the Supreme Court of Michigan's seminal explanation:

> The important fact to be observed in regard to the mode of procedure upon this writ is, that it is directed to, and served upon, not the person confined, but his jailor. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors, and set the prisoner free, *but the court relieves him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent*, and if he fails to obey it, the means to be resorted to for the purposes of compulsion are fine and imprisonment. This is the ordinary mode of affording relief, *and if any other means are resorted to, they are only auxiliary to those which are usual.*

*In re: Jackson*, 15 Mich. 417, 439-40 (1867). See also *Ex parte Endo*, 323 U.S. 283, 306 (1944) (quoting *Jackson*); *Rumsfeld*, 542 U.S. at 440 n.13 (noting that "[i]f personal involvement [in the underlying conviction] were the standard, 'then the prosecutor, the trial judge, or the governor would be named as respondents' in criminal habeas cases. *Al-Marri v. Rumsfeld*, 360 F.3d 707, 711 (C.A.7 2004). As the Seventh Circuit correctly held, the proper respondent is the person responsible for maintaining - not authorizing - the custody of the prisoner.").

These cases collectively establish that where, as here, a federal court sitting in habeas concludes that a petition challenging the validity of a federal conviction must be granted, the writ is properly directed to the petitioner's immediate custodian to effectuate the grant of habeas relief. *Rumsfeld*, 542 U.S. at 451; *Braden*, 410 U.S. at 494-95. Accordingly, it is hereby

**ORDERED** as follows:

1. Boone's petition for a writ of habeas corpus [Record No. 1] is **GRANTED**.

2. Boone's conviction under 18 U.S.C. § 924(c)(1) for using a firearm in furtherance of a drug trafficking crime in Count 27 of the underlying criminal action, *United States v. Boone*, No. 2: 92-CR-113-2 (E.D. Va. 1992), is **VACATED**.

3. Respondent Francisco Quintana, in his official capacity as the Warden of the Federal Medical Center in Lexington, Kentucky, and pursuant to his statutory authority set forth in Chapter 29 of 18 U.S.C. §§ 3621-3626 shall **EXECUTE** the sentence imposed in *United States v. Boone*, No. 2: 92-CR-113-2 (E.D. Va. 1992) on February 2, 1993, as

amended by that Court's Orders dated January 20, 1995 and December 18, 1996 [see Record No. 27-13 at pp. 18-27; No. 27-15 at pp. 12-18; No. 27-8 at pp. 20-23], and as affected by this Memorandum Opinion and Order, by recalculating Reginald Boone's sentence without the consecutive 60-month sentence imposed for an asserted violation of 18 U.S.C. § 924(c)(1) as set forth Count 27 of the indictment.

4. The Court will enter a Judgment contemporaneously with this Order.

5. This matter is **STRICKEN** from the docket.

This 27th day of June, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge